**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| AMANDA McGONIGLE, <br><br> *Plaintiff*, <br><br> v. <br><br> SEAN M. CURRAN, in his official capacity as Director of the U.S. Secret Service, JOHN HILLER, in his official capacity as Director of Presidential Advance, EXECUTIVE OFFICE OF THE PRESIDENT, and UNITED STATES SECRET SERVICE, <br><br> *Defendants*. | Civil Case Number: |

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

1.      This case challenges First Amendment retaliation and viewpoint discrimination at official events held by Vice President JD Vance.

2.      Vice President Vance leads the White House Task Force to Eliminate Fraud. On May 14, 2026, Vice President Vance held an official government event in Bangor, Maine, (the "Bangor Event") publicizing the task force and touting the goal of "protecting taxpayer dollars."[1]

3.      Vice President JD Vance and his staff invited members of the public to register as audience members for the Bangor Event using an official link issued by the Executive Office of the President. Audience members at the Bangor Event expressed their views by cheering, booing, wearing clothing with political messages, and shouting messages. After the event, Vice President

---

[1] The White House Videos, *Vice President JD Vance Delivers Remarks in Bangor, Maine*, THE WHITE HOUSE (May 14, 2026), https://www.whitehouse.gov/videos/vice-president-jd-vance-delivers-remarks-in-bangor-maine/.

Vance highlighted audience expression on his official social media accounts, referencing the "fired up crowd in Maine."

4.    Plaintiff Amanda McGonigle operates social media accounts with the username CatsOnACouch, which she created after Vance said that the country was being run by "childless cat ladies." Ms. McGonigle has more than 1.9 million followers and regularly posts messages that are critical of Vice President Vance, sharing political messages with her "petty besties," and engaging in "good trouble," such as mutual aid efforts in Minneapolis, Minnesota.

5.    In early May, Ms. McGonigle registered to attend the Bangor Event, where she planned to participate as an audience member to express her disapproval of Vice President Vance. Ms. McGonigle received official confirmation, traveled to Bangor to attend the event, and complied with all "guest guidance" provided by the Executive Office of the President. However, when Ms. McGonigle was standing in line, armed Secret Service officers singled her out by name and excluded her from the event, telling her that "we know where you stand."

6.    The Bangor Event was not the first time that Ms. McGonigle was excluded from an official Vice Presidential event. Ms. McGonigle previously registered to attend another official event in Des Moines, Iowa (the "Des Moines Event") on May 5, 2026. Event organizers sent confirmation emails with attendance information to other registrants, but did not send such confirmation to Ms. McGonigle.

7.    In the coming weeks, Ms. McGonigle plans to attend official events of Vice President Vance located anywhere across the country. Given defendants' practice of excluding Ms. McGonigle, there is a credible threat that Ms. McGonigle will be excluded from such events, and remaining in a restricted area of a building or grounds where a Secret Service protectee (the

Vice President) "is or will be temporarily visiting" could subject Ms. McGonigle to criminal penalties, *see* 18 U.S.C. §§ 1752(a), (c)(1)(B), 3056(a)(1).

8.    Ms. McGonigle respectfully requests that the Court (1) declare that excluding Ms. McGonigle from official events based on her viewpoint or in retaliation for past expression violates the First Amendment, and (2) enjoin John Hiller, Director of Presidential Advance, and Sean Curran, Director of the Secret Service, in their official capacities, as well as the Executive Office of the President and the U.S. Secret Service, from engaging in First Amendment retaliation and viewpoint discrimination at future vice presidential events.

**Parties**

9.    Plaintiff Amanda McGonigle resides in Falmouth, Massachusetts, and operates an Instagram account under the username CatsOnACouch. CatsOnACouch is a "petty cat account" that "exists purr-ly to troll the current administration & have more followers than JD Vance." The CatsOnACouch Instagram account has more than 1.9 million followers. Ms. McGonigle also operates a Facebook account with the same username, which has more than 654,000 followers.

10.    Defendant John Hiller is the Director of the Office of Presidential Advance, which is responsible for organizing and executing presidential and vice presidential events across the country and around the world. Defendant Hiller, acting through staff, coordinated audience registration and attendance at Vice President Vance's official events in Des Moines, Iowa, on May 5, 2026, and Bangor, Maine, on May 14, 2026, and will coordinate future events.

11.    Defendant Sean M. Curran is the Director of the U.S. Secret Service. The U.S. Secret Service is charged to protect the Vice President pursuant to 18 U.S.C. §§ 3056, 3056A. Defendant Curran, acting through staff, implemented the Office of Presidential Advance's practices regarding audience attendance at Vice President Vance's appearances in Des Moines,

3

Iowa, on May 5, 2026, and Bangor, Maine, on May 14, 2026, and will provide similar enforcement at future events.

12. The Executive Office of the President is a federal agency or department headquartered in Washington, D.C., and includes the Office of Presidential Advance.

13. The U.S. Secret Service is a federal agency or department headquartered in Washington, D.C.

## Jurisdiction and Venue

14. This Court has subject matter jurisdiction over Plaintiff's claims because at least one claim arises under federal law under 28 U.S.C. § 1331.

15. Venue is proper in this Court under 28 U.S.C. § 1391(b) and (e) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## Factual Background

### *Vice President Vance Chairs the Fraud Task Force*

16. Vice President JD Vance leads the White House Task Force to Eliminate Fraud, a wide-ranging, multi-agency project implicating the administration of billions of dollars in federal benefits and programs.

17. On March 16, 2026, President Trump signed Executive Order 14395, "Establishing the Task Force to Eliminate Fraud." "The Vice President of the United States is to serve as chairman" of the task force. *See* Exec. Oreder 14395, 91 FR 13485 (Mar. 16, 2026) ("E.O. 14395").

18. The Executive Order requires the task force to address how state, local, tribal, or territorial jurisdictions "demonstrate implementation of the anti-fraud requirements," with the threat of withholding federal funds from jurisdictions that "do not have adequate anti-fraud requirements." E.O. 14395 § 4(b).

19.    One of the first actions taken as part of this effort was to halt nearly $260 million in Medicaid payments to Minnesota in February 2026.

20.    In May 2026, the Trump Administration suspended $1.4 billion in funding for home health and hospice care and stopped new Medicare enrollments for hospice providers nationwide.

### *Vice President Vance Holds Official Events Touting the Fraud Task Force*

21.    The Office of Presidential Advance is responsible for organizing and executing vice presidential events across the country, including recent official events by Vice President Vance touting the work of the fraud task force.

22.    Vice President Vance held multiple official events in May 2026 to publicize the work of the task force.

23.    On May 5, 2026, Vice President Vance held an official event in Des Moines, Iowa, touting the work of the fraud task force.

24.    The Des Moines Event was an official government event, as reflected by (1) the discussion of official topics and policies of the Trump Administration, including the fraud task force,[2] (2) the use of an Executive Office of the President link for registration, and (3) the use of federal appropriations and official White House communication channels to distribute video of the event.

---

[2] The White House Videos, *Vice President JD Vance Delivers Remarks in Des Moines, Iowa*, THE WHITE HOUSE, at 33:00 (May 5, 2026), https://www.whitehouse.gov/videos/vice-president-jd-vance-delivers-remarks-in-des-moines-iowa/.



25.     Appropriated funds were used to pay for government officials to travel to the Des Moines Event.

26.     Appropriated funds were also used to pay for organizing and publicizing the Des Moines Event.

27.     On May 14, 2026, Vice President Vance held an official event in Bangor, Maine, again touting the work of the fraud task force.

28.     The Bangor Event was an official government event.

29.     Appropriated funds were used to pay for travel to the Bangor Event by government officials, including the Acting Secretary of Labor, who attended the event and introduced Vice President Vance.

30.     The Bangor Event addressed government policies regarding the fraud task force, as highlighted by a post on Vice President Vance's official Facebook page, stating that "Vice President Vance gives remarks on the Trump Administration's War against Fraud in Bangor, Maine."

6



31.    The Executive Office of the President organized registration for the event, making a link available for the general public to register for the event.



32.    Finally, the White House used federal appropriations and a federal website to publicize the Bangor Event, posting a video of the event on the official White House website.



*Administration Officials Are Aware of Political Criticism from CatsOnACouch*

33.     Ms. McGonigle created the CatsOnACouch account as a "petty cat account" that "exists purr-ly to troll the current administration & have more followers than JD Vance."



34.     This cat account of "petty paw-litics" started after comments made by JD Vance about the country being run by "childless cat ladies" [3] went viral in 2024.

35.     The CatsOnACouch Instagram account has 1.9 million followers and counting.

36.     The CatsOnACouch Facebook account has more than 571,000 followers.

37.     The accounts feature a combination of political commentary, petty mockery of Vice President Vance, silly cat images, and calls for community action.



_____

[3] Rachel Treisman, *JD Vance Went Viral For 'Cat Lady' Comments. The Centuries-Old Trope has a Long Tail*, NPR (July 29, 2024), https://perma.cc/M6C6-ZQDF.

38.     The CatsOnACouch community of followers has raised more than $200,000 in donations used to purchase items for people in need, including baby formula, non-perishable items, cold weather gear, gas cards, grocery cards, and other essentials for people impacted by crackdowns by immigration officials.

39.     Given the size of this online community, it is no surprise that Trump Administration officials know about CatsOnACouch and about Ms. McGonigle specifically.

40.     For example, at a protest in Nantucket, Massachusetts in July 2024, a Secret Service officer told Ms. McGonigle that "of course" they knew about CatsOnACouch.

41.     Additionally, Secret Service officers and other government officials singled out Ms. McGonigle by name (calling her "Amanda") when she was standing in line at the Bangor Event.

***Defendants Exclude Ms. McGonigle from Official Events in Retaliation for her Past Speech and Because of Her Viewpoint***

42.     Defendant Hiller, acting through staff in the Office of Presidential Advance, coordinated audience registration and attendance at Vice President Vance's official events in Des Moines, Iowa, on May 5, 2026, and Bangor, Maine, on May 14, 2026, and will coordinate future official events for the Vice President.

43.     Defendant Curran, acting through staff, enforced the Office of Presidential Advance's decisions regarding audience attendance at the Bangor Event and will do so at future vice presidential events.

44.     A Presidential Advance Manual from 2002 provides guidance for "deterring potential protesters from attending events."[4]

---

[4] Office of Presidential Advance, *Presidential Advance Manual* at 17 (October 2002), https://perma.cc/96J7-MQYQ (capitalization altered).

45.     Although current policies of the Office of Presidential Advance are not publicly accessible, the Office of Presidential Advance has a practice of excluding people with disfavored viewpoints from official events of the President and Vice President.

46.     For example, Ms. McGonigle did not receive guest guidance or details to attend the Des Moines Event, despite registering for the event and despite other people receiving guest guidance and confirmation of attendance.

47.     Ms. McGonigle registered for the Des Moines Event using her real name and identity.

48.      After registering for the Des Moines Event, Ms. McGonigle received notice from the Office of Presidential Advance that guest guidance and additional details would be provided.



49.     The Office of Presidential Advance sent confirmation emails with guest guidance and details to attend the event to other registrants, but never provided such confirmation to Ms. McGonigle.

50.     Ms. McGonigle also registered for the Bangor Event and received confirmation on a website administered by the Executive Office of the President using the domain name eoppra.



51.     The Executive Office of the President provided guest guidance and details for attending the Bangor Event.



52.    The guest guidance included the official seal of the Office of the Vice President of the United States.

53.    Ms. McGonigle complied with all guest guidance communicated by the Executive Office of the President, including the prohibition on carrying bags or purses, or bringing signs or placards.

54.    Ms. McGonigle arrived in Bangor as instructed by the guest guidance and stood in line with a friend.

14

55. While Ms. McGonigle was standing in line, a group of five officials, including two armed Secret Service officers, approached Ms. McGonigle and singled her out by name, calling her "Amanda."

56. Officials excluded Ms. McGonigle from the event based on her political viewpoints, telling her that "we know where you stand."

57. Officials prevented Ms. McGonigle from attending an official event because the content of her past expression was critical of the Vice President.

58. Ms. McGonigle responded that "it is a cat account; this is silly."

59. Officials attempted to justify their viewpoint discrimination by incorrectly telling Ms. McGonigle that the event was "private."

60. Ms. McGonigle requested confirmation, asking: "To be clear, it's a private event and even though I received my registration via email, I can't attend."

61. An official responded, "that is correct."

62. The officials' incorrect statement that the event was "private" reflects a practice of falsely claiming that official vice presidential events are private political events where those who hold opposing viewpoints may be excluded, even though such official government events are paid for with government appropriations and open to the public for registration, and despite the organizers and speakers inviting or permitting audience members to express themselves at such official events.

63. Officials also ejected Ms. McGonigle's friend who was standing with her in line.

64. There was no reason for ejecting Ms. McGonigle's friend other than his association with Ms. McGonigle.

65. The exclusion of Ms. McGonigle and her friend from the Bangor Event carried the threat of a criminal penalty for remaining in a restricted area of a building or grounds where the Vice President "is or will be temporarily visiting." 18 U.S.C. §§ 1752(a), (c)(1)(B), 3056(a)(1).

66. Ms. McGonigle's political viewpoints and past statements—namely, that officials know where she "stand[s]" on Vice President JD Vance—were the only justifications provided for excluding her and her friend from the Bangor Event.

67. The officers did not articulate any safety concern or failure to comply with the rules as a basis for excluding Ms. McGonigle and her friend.

68. Ms. McGonigle and her friend posed no safety threat and complied with all rules.

69. After the event, a video of the Bangor Event was posted on the official White House website, featuring both the speech by Vice President Vance and the audience reactions to the Vice President's speech, including cheering, booing, and shouting out messages.[5]

70. Vice President Vance highlighted the expression of audience members by sharing an article describing the "fired up crowd in Maine" on his official social media accounts.

---

[5] THE WHITE HOUSE, *supra* note 1.



71.     Because of Defendants' exclusion of Ms. McGonigle from the Bangor Event, Ms. McGonigle was unable to express her views at the official event as a dissenting audience member.

72.     For example, Ms. McGonigle was wearing a t-shirt stating "JD Vance cured my imposter syndrome." Although her t-shirt was under an outer layer while Ms. McGonigle was standing in line, Ms. McGonigle intended to display the message inside the event.

73.     Had Ms. McGonigle been permitted to attend the Bangor Event for which she had registered, she would have expressed her dissenting views by, for example, staying silent or booing while others clapped or cheered, smiling, frowning, crossing her arms, or wearing clothing with political messages.

### *Defendants Will Exclude Ms. McGonigle from Future Official Events*

74.     The government's conduct in singling out Ms. McGonigle and excluding her from an official event for which she had registered would deter a reasonable person from expressing views and causes that are disfavored by the government.

75.     However, these tactics have not silenced Ms. McGonigle. Ms. McGonigle plans to attend official events of Vice President Vance that are scheduled in the coming weeks, regardless of where in the United States the events are scheduled.

76.     Vice President Vance regularly holds official events that are available for registration by the public, creating a limited public forum for audience expression.

77.     Vice President Vance will continue to hold such events in the coming weeks.

78.     Event organizers generally provide only two or three days' notice to the public before such official vice presidential events.

79.     For example, Vice President Vance held an official event in Toledo, Ohio, on January 22, 2026,[6] and the Office of Presidential Advance publicized the registration link two days before the event, on January 20, 2026.

80.     On March 13, 2026, Vice President Vance held an official event in Rocky Mount, North Carolina,[7] with the registration link publicized the day before, on March 12, 2026.

81.     On March 18, 2026, Vice President Vance held an official event in Auburn Hills, Michigan,[8] with public notice provided two days before, on March 16, 2026.

82.     Although the Des Moines Event was held on May 5, the event was originally scheduled for April 30, only two days after the public notice on April 28.

---

[6] The White House Videos, *Vice President JD Vance Delivers Remarks in Toledo, Ohio, Jan. 22, 2026*, THE WHITE HOUSE (Jan. 22, 2026), https://www.whitehouse.gov/videos/vice-president-jd-vance-delivers-remarks-in-toledo-ohio-jan-22-2026/.

[7] The White House Videos, *Vice President JD Vance Delivers Remarks in Rocky Mount, NC*, THE WHITE HOUSE (Mar. 13, 2026), https://www.whitehouse.gov/videos/vice-president-jd-vance-delivers-remarks-in-rocky-mount-nc/.

[8] The White House Videos, *Vice President JD Vance Delivers Remarks in Auburn Hills, MI*, THE WHITE HOUSE (Mar. 18, 2026), https://www.whitehouse.gov/videos/vice-president-jd-vance-delivers-remarks-in-auburn-hills-mi/.

83. On May 14, 2026, Vice President Vance held the Bangor Event, with public notice provided three days before the event, on May 11, 2026.

84. When future official vice presidential events are publicized, Ms. McGonigle plans to register and attend the events, no matter where in the United States they are located.

85. At these future events, Ms. McGonigle intends to express her views as an audience member, including by cheering, booing, and wearing clothing with political messages. She also intends to gather information about government policies to share with her millions of followers.

86. Defendants know Ms. McGonigle's name and appearance and, at past events, have taken affirmative steps to identify Ms. McGonigle and to exclude her from the audience.

87. Defendants' past actions demonstrate that absent relief from this Court, defendants will exclude Ms. McGonigle from upcoming official events by refusing to send event details or refusing to allow her to enter the event.

## Claims for Relief

### Count I
### Retaliation in Violation of First Amendment
### U.S. Const. amend. I

#### *All Defendants*

88. Plaintiff realleges and incorporates all of the foregoing allegations.

89. To prevail on a First Amendment retaliation claim, a "plaintiff must first prove that (1) he or she engaged in constitutionally protected conduct, (2) he or she was subjected to an adverse action by the defendant, and (3) the protected conduct was a substantial or motivating factor in the adverse action." *D.B. ex rel. Elizabeth B. v. Esposito*, 675 F.3d 26, 43 (1st Cir. 2012).

90.     Ms. McGonigle engaged in constitutionally protected speech and expression on her social media accounts, including posting texts and other content criticizing Vice President Vance and his policies.

91.     Defendants subjected Ms. McGonigle to an adverse action by having armed U.S. Secret Service officers exclude her from the Bangor Event because of her protected speech and expression.

92.     Defendants also excluded Ms. McGonigle from the Des Moines Event by withholding confirmation details to attend the event.

93.     Ms. McGonigle's protected speech and expression were substantial or motivating factors in the Defendants' decision to exclude her from the Des Moines and Bangor Events.

94.     Defendants will continue to retaliate against Ms. McGonigle for engaging in constitutionally protected speech and expression by excluding her from future official events featuring Vice President Vance.

95.     Defendants violate the First Amendment by excluding Ms. McGonigle from official vice presidential events in retaliation for her protected speech and expression.

**Count II**
**Viewpoint Discrimination in Violation of First Amendment**
**U.S. Const. amend I**

*All Defendants*

96.     Plaintiff re-alleges and incorporates all of the foregoing allegations.

97.     When the government creates a "limited" public forum for private speech—whether in "a literal or 'metaphysical' sense"—some content- and speaker-based restrictions may be allowed, but "viewpoint discrimination" is forbidden. *Matal v. Tam*, 582 U.S. 218, 243 (2017) (citations omitted).

20

98.     "[V]iewpoint discrimination ... is presumed impermissible when directed against speech otherwise within the forum's limitations." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829–30 (1995). Even in a nonpublic forum, any regulation of speech must be "reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 46 (1983) (citation omitted).

99.     The "hallmark" of limited or designated forums "is that the government has made the space available . . . for 'expressive public conduct' or 'expressive activity,' and the space is compatible with such activity." *Davison v. Randall*, 912 F.3d 666, 681–82 (4th Cir. 2019), *as amended* (Jan. 9, 2019) (citations omitted).

100.    The Executive Office of the President and Director Hiller, in his official capacity as the Director of Presidential Advance, create a limited public forum for private expression by organizing official government events featuring Vice President Vance and inviting the public to register as audience members. Audience members at such events engage in protected expression such as cheering or booing at appropriate moments, smiling or frowning, and wearing clothing with political messages. Audience members cannot be excluded from events merely because the government disapproves of their views.

101.    The Executive Office of the President and Director Hiller, in his official capacity as the Director of Presidential Advance, through staff, follow a practice of falsely claiming that official government events held by the Vice President are private political events and excluding people with viewpoints disfavored by the Administration.

102.    The U.S. Secret Service and Director Curran, in his official capacity as Director of the U.S. Secret Service, enforce the decisions of the Office of Presidential Advance and the

Executive Office of the President to exclude people with disfavored viewpoints from official events.

103.   Ms. McGonigle plans to attend future vice presidential events and to express her views as an audience member in a manner consistent with the limited public forum for audience participation.

104.   Through staff, Director Hiller and Director Curran know the identity of Ms. McGonigle and the political viewpoints that she has expressed and will exclude her from future events.

105.   Defendants' exclusion of Ms. McGonigle from official events held by Vice President Vance violates the First Amendment because it imposes a viewpoint-based restriction in a limited public forum.

106.   Defendants' exclusion of Ms. McGonigle from official events held by Vice President Vance violates the First Amendment because it imposes a viewpoint-based restriction on Ms. McGonigle's right to hear and receive information and ideas.

107.   Defendants' exclusion of Ms. McGonigle from official events held by Vice President Vance violates the First Amendment because it imposes a viewpoint-based restriction on Ms. McGonigle's access to official statements the Vice President otherwise makes available to audience members at official events.

**Prayer for Relief**

Plaintiff therefore respectfully requests that the Court:

108.   Declare that excluding Ms. McGonigle from official vice presidential events in retaliation for her protected speech and expression is unconstitutional;

22

109.    Declare that Defendants' viewpoint-based exclusion of Ms. McGonigle from official vice presidential events is unconstitutional;

110.    Enter an injunction prohibiting Defendants from excluding Ms. McGonigle from official vice presidential events in retaliation for her protected speech and expression or based on her viewpoint;

111.    Award Plaintiffs their costs, including reasonable attorneys' fees, pursuant to 28 U.S.C. § 2412; and

112.    Grant any such additional and further relief as the Court deems just and proper.

23

Date: July 7, 2026                          Respectfully submitted,

                                            AMANDA MCGONIGLE.

                                            By her attorneys:

/s/ Anahita Sotoohi                         /s/ Carol Garvan
Anahita Sotoohi (Bar No. 10120)             Carol Garvan (Bar No. 4448)
ACLU of Maine Foundation                    ACLU of Maine Foundation
PO Box 7860                                 PO Box 7860
Portland, Maine 04112                       Portland, Maine 04112
(207) 613-4350                              (207) 619-8687
asotoohi@aclumaine.org                      cgarvan@aclumaine.org

/s/ Zachary L. Heiden                       /s/ Emma E. Bond
Zachary L. Heiden (Bar No. 9476)            Emma E. Bond (Bar No. 5211)
ACLU of Maine Foundation                    ACLU of Maine Foundation
PO Box 7860                                 PO Box 7860
Portland, Maine 04112                       Portland, Maine 04112
(207) 619-6224                              (207) 619-8688
zheiden@aclumaine.org                       ebond@aclumaine.org

/s/ Laura Moraff                            /s/ Brian Hauss
Laura Moraff*                               Brian Hauss*
American Civil Liberties Union Foundation   American Civil Liberties Union Foundation
125 Broad Street, Floor 18                  125 Broad Street, Floor 18
New York, New York 10004                    New York, New York 10004
(212) 549-2500                              (212) 549-2500
lauramoraff@aclu.org                        bhauss@aclu.org

*Certifications for admission *pro hac vice*
forthcoming.                                *Counsel for Plaintiff*

24